NUMBER 13-04-223-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


TUMMEL & CASSO, HAROLD

K. TUMMEL AND LYDIA CASSO

TUMMEL, Appellants,


v.



WILLIAM SNYDER, M.D., PATRICIA

SNYDER AND RIO GRANDE 

ORTHOPAEDIC INSTITUTE, P.A., Appellees.

 


On appeal from the 93rd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Hinojosa (1) and Yañez 


Memorandum Opinion by Justice Yañez


 Appellants, Tummel & Casso ("T&C"), Harold K. Tummel ("Tummel"), and Lydia
Casso Tummel, appeal from several trial court orders granting summary judgment in favor
of appellees, William K. Snyder, M.D., Patricia Snyder, and Rio Grande Orthopaedic
Institute, P.A. We reverse the judgments granted in appellees' favor and remand to the
trial court for further proceedings.

Background 


 T&C sued appellees for unpaid attorneys' fees and related note balances for legal
representation that T&C provided to appellees. (2) Appellees filed a counterclaim, alleging
legal malpractice. On April 20, 2000, the trial court granted summary judgment in T&C's
favor on its claim for attorneys' fees. The trial court's April 20, 2000 order also severed
T&C's claims into a separate cause number, cause number C-4419-99-B(1) ("the severed
cause").

 On May 9, 2000, appellees filed a motion for reconsideration in the parent cause
number, requesting the trial court to reconsider and vacate its April 20 order in T&C's favor. 
On May 19, 2000, the trial court granted appellees' motion for reconsideration and vacated
its April 20, 2000 summary judgment order. Thereafter, T&C filed a motion in the parent
cause number, arguing that the trial court lacked jurisdiction to grant the May 19, 2000
order because it was granted in the parent cause rather than in the severed cause. The
trial court rejected T&C's argument.

 On March 1, 2001, appellees filed a no-evidence motion for partial summary
judgment, (3) alleging that as a matter of law, T&C did not have the evidence necessary to
sustain its claim for attorneys' fees. Specifically, appellees alleged that T&C had no
evidence establishing the reasonableness and necessity of the attorneys' fees at issue. 
In the motion, appellees also challenged T&C's reliance on certain demand promissory
notes executed by William and Patricia Snyder in favor of T&C.

 On March 29, 2001, appellees filed a "traditional" motion for partial summary
judgment, alleging that appellants had committed legal malpractice in connection with their
representation of appellees in two legal matters. Specifically, appellees alleged that
appellants committed malpractice by pursuing (on appellees' behalf) the enforcement of
a non-compete agreement against Dr. Michael Sweeney ("the Sweeney litigation"), despite
the absence of any chance of successful enforcement because there was no written
agreement. Secondly, appellees alleged that appellants committed malpractice by filing
a lawsuit to protect Dr. Snyder's right to continue practicing at a surgery center, despite the
absence of any chance of success because Dr. Snyder had failed to exhaust his
administrative remedies. In support of their motion, appellees attached numerous
documents, including copies of the unsigned non-compete agreement. 

 On August 31, 2001, the trial court granted appellees' no-evidence motion, ordering
that T&C take nothing on its claim for attorneys' fees.

 On February 21, 2003, appellees filed a third motion for partial summary judgment,
alleging that appellants committed malpractice in their handling of the Sweeney litigation (4)
and seeking damages of the attorneys' fees paid to T&C. 

 On April 25, 2003, the trial court granted appellees' traditional motion for summary
judgment for legal malpractice against appellants in connection with the Sweeney litigation. 
On April 5, 2004, the trial court granted appellees' third motion for summary judgment,
awarding them damages in the amount of $134,074.64. On June 18, 2004, the trial court
granted final judgment in appellees' favor and denied appellants' motion for sanctions. 

 In seven issues, appellants generally challenge the trial court's orders granting
judgment in appellees' favor. 

Standard of Review 


 The standard of review for the grant of a motion for summary judgment is
determined by whether the motion was brought on no-evidence or traditional grounds. (5) We
review de novo a trial court's grant or denial of a traditional motion for summary judgment. (6) 
The movant bears the burden of showing both no genuine issue of material fact and
entitlement to judgment as a matter of law. (7) In deciding whether there is a genuine issue
of material fact, we take evidence favorable to the non-movant as true. (8) We make all
reasonable inferences and resolve all doubts in favor of the non-movant. (9) When a trial
court grants summary judgment without specifying the basis on which it is granted, the
appellant must show that it was error to base the summary judgment on all grounds
asserted in the motion. (10) 

 A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this
Court applies the same legal sufficiency standard on review. (11) In an appeal of a
no-evidence summary judgment, this Court reviews the evidence in the light most favorable
to the nonmovant, disregarding all contrary evidence and inferences. (12) If the nonmovant
produces evidence to raise a genuine issue of material fact, summary judgment is
improper. (13) All that is required of the non-movant is to produce a scintilla of probative
evidence to raise a genuine issue of material fact. (14) "Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere surmise or
suspicion of a fact.'" (15) Conversely, more than a scintilla exists when the evidence "rises
to a level that would enable reasonable and fair-minded people to differ in their
conclusions." (16) The burden of producing evidence is entirely on the non-movant; the
movant has no burden to attach any evidence to the motion. (17)

Applicable Law


 An attorney malpractice action in Texas is based on negligence and requires proof
of four elements: the existence of a duty, the breach of that duty, that the breach was a
proximate cause of damages, and that the plaintiff was damaged. (18) The components of
proximate cause are cause-in-fact and foreseeability. (19) These elements cannot be
established by mere conjecture, guess, or speculation. (20) If an attorney demonstrates that
his malfeasance was not the cause of any damages to the client, a summary judgment
may be proper. (21)

 The test for cause-in-fact is whether the negligent "act or omission was a substantial
factor in bringing about injury," without which the harm would not have occurred. (22) The
word "substantial" is used to denote the fact that the defendant's conduct has such an
effect in producing the harm as to lead reasonable men to regard it as a cause, using that
word in the popular sense, in which there always lurks the idea of responsibility. (23)
Cause-in-fact is not shown if the defendant's negligence did no more than furnish a
condition which made the injury possible. (24) Although proximate cause in a legal
malpractice action is usually a question of fact, it may be determined as a matter of law if
the circumstances are such that reasonable minds could not arrive at a different
conclusion. (25)

 As the Texas Supreme Court has noted, 

If an attorney makes a decision which a reasonably prudent attorney could
make in the same or similar circumstance, it is not an act of negligence even
if the result is undesirable. Attorneys cannot be held strictly liable for all of
their clients' unfulfilled expectations. An attorney who makes a reasonable
decision in the handling of a case may not be held liable if the decision later
proves to be imperfect. The standard is an objective exercise of professional
judgment, not the subjective belief that his acts are in good faith. (26)


 Because a lawyer is held to the standard of care that would be exercised by a
reasonably prudent attorney, expert testimony of an attorney is usually necessary to
establish the standard of skill and care ordinarily exercised by an attorney. (27) To establish
compliance with the standard, expert testimony is also usually required. (28) 

Analysis 


 In their first two issues, appellants contend the trial court erred in granting appellees' 
February 21, 2003 traditional motion for partial summary judgment for legal malpractice
and damages. Specifically, appellants contend that appellees failed to establish at least
two elements of their malpractice claim: breach of the standard of care and causation. In
their third issue, appellants contend the trial court erred in granting summary judgment
establishing damages as a matter of law based on appellees' legal malpractice claims. We
address these issues together. 

 In their motion, appellees contend that appellants committed malpractice by seeking
to enforce a non-compete agreement against Sweeney even though they knew there was
no written agreement. The motion asserts that appellants failed to discharge their "duty
to explain the applicable law, explain any potential defenses or impediments to the goal
sought, and allow [appellees] the opportunity to make a reasoned decision about initiating
and/or continuing to pursue litigation." It also asserts that appellants "induced" appellees 
into signing promissory notes for legal invoices and that appellees "believe" appellants
were using the notes and invoices as collateral for a line of credit through appellants' bank.

 Appellees' summary judgment evidence includes the affidavits of (1) William
Snyder, (2) Patricia Snyder, (3) Reynaldo Ortiz, appellees' counsel, and (4) Steven L. Lee,
an attorney and appellees' expert. The summary judgment evidence also includes various
documents attached to the affidavits. 

 William Snyder's affidavit states that when he initially met with Tummel to discuss
the Sweeney matter, he gave him copies of a non-compete agreement that had been
discussed with Sweeney, but made it clear that the agreements had never been signed. 
Snyder states that he "incurred thousands of dollars in legal fees to advance a claim that
apparently had no hope of prevailing." He further states that Tummel "required" that he
and Patricia sign promissory notes for the legal fees incurred. A copy of the unsigned
"employment agreement" was also provided as summary judgment evidence.

 Patricia Snyder's affidavit also states that Tummel was told that an agreement had
been discussed with Sweeney but that no signed written agreement existed. She stated
that Tummel insisted he could enforce the non-compete agreement against Sweeney
despite the absence of a written agreement.

 Attached to Reynaldo Ortiz's affidavit is an excerpt from Tummel's responses to
appellees' interrogatories. In the responses, Tummel asserts that although appellees did
not provide him a copy of the written agreement with Sweeney, they represented to him
that Sweeney had agreed in writing to certain "non-compete" provisions in the agreement.

 Steven L. Lee's affidavit states that Tummel had a duty to inform his clients
(appellees) that without a written agreement, enforcement of an oral covenant-not-to-compete was "highly unlikely under the existing law." He states that the Tummel
defendants were stuck on the "fixed notion" of enforcing an oral contract, and that there
was an appearance of an "absence of attention to finding the appropriate vehicle" to
pursue appellees' goals. He also states that

the evidence gives every appearance that the Tummel Defendants sacrificed
their fiduciary duties of utmost fairness, candor, rendition of independent
legal advice and judgment, and placing paramount the clients' interest in
order to provide financial benefit to themselves. Bluntly stated, it appears
that the Tummel Defendants identified a client with a legal problem and deep
pockets and proceeded to bill that client with great vigor, based more on the
lawyers' financial needs than the client's legal needs. 


*
 * * *


As I am unaware of any evidence that Dr. Snyder or an agent was ever
presented with information concerning potential downside risks and the
attendant costs of certain of the services. l am also unaware of any evidence
that Dr. Snyder turned the Tummel Defendants loose with instructions to
"spare no expenses" or to "vigorously pursue this even though it is a long
shot," without regard to costs or ultimate outcome. When this is coupled with
the unusual financial arrangement of securing each invoice with a promissory
note and using the notes and/or receivables to maintain a line of credit at a
bank, the inescapable conclusion is that the Tummel Defendants breached
their fiduciary duties.


 Appellants contend that appellees' summary judgment evidence is inadequate to
establish causation as a matter of law. In their brief, appellees assert that "[t]he proximate 
cause of [their] damages is therefore the fact that by not disclosing the vast remoteness
of success the Appellants continued to bill for a claim destined to fail." We agree with
appellants that appellees' summary judgment evidence is insufficient to establish their right
to judgment as a matter of law. (29)

 An affidavit that merely contains an expert's conclusory statements is insufficient to
support or defeat summary judgment. (30) This is true because such statements are not
credible or susceptible to being readily controverted. (31) An expert's affidavit supporting a
motion for summary judgment must be clear, positive, direct, otherwise credible, free from
contradictions and inconsistencies, and readily controvertible. (32) Here, Lee's affidavit
asserts the "appearance" of an absence of attention by appellants to finding an appropriate
legal strategy for accomplishing their clients' goals and a "strong appearance" that
appellants' "judgment was impaired by their own financial interests." After reviewing Lee's
affidavit, we conclude it contains no more than conclusory statements that are insufficient
to support summary judgment. (33) We sustain appellants' first and second issues.

 In their third issue, appellants challenge the trial court's summary judgment as to
damages. We agree. No recovery is allowed unless liability has been established. (34) In
the absence of liability, the question of damages becomes immaterial. (35) We sustain
appellants' third issue. 

 In their fourth issue, appellants contend that the trial court lacked jurisdiction to grant
appellees' no-evidence motion for summary judgment because the court's May 9, 2000
order granting appellees' motion for reconsideration and vacating the summary judgment
in appellants' favor was granted in the parent cause rather than in the severed cause. We
disagree. 

 This Court has previously considered and rejected appellants' argument. (36)
 We
again reject appellants' argument that the trial court lacked jurisdiction. We overrule
appellants' fourth issue. 

 In their fifth issue, appellants contend the trial court erred in granting appellees' no-evidence summary judgment motion on appellants' claims for attorneys' fees. We agree.

 In their no-evidence summary judgment motion, appellees argued that appellants
lacked "legally sufficient evidence to establish the reasonableness and necessity of [their
attorneys'] fees." In response to the motion, appellants presented four affidavits of Harold
Tummel. (37) Attached to Tummel's December 21, 1999 affidavit are nine promissory notes
executed by William and Patricia Snyder. Tummel's affidavit identifies T&C as the holder
of the notes and identifies the unpaid balances due to T&C under the notes. Appellants
cite Hall v. Fowler, 389 S.W.2d 730, 732 (Tex. App.-Dallas 1965, no writ), in support of
their argument that when a client has given a promissory note in lieu of payment for legal
services already rendered, the client is estopped from later claiming that the charges for
such services were not reasonable. In Fowler, a client executed a promissory note to her
attorney for legal fees rendered pursuant to the client's divorce. (38) After the client defaulted,
the attorney sued and moved for summary judgment, which was granted and affirmed on
appeal, even though the former client claimed inadequate consideration for the note. (39) In 
affirming the summary judgment in favor of the attorney, the Fowler court stated:

One cannot receive and accept the personal services of another, and
thereafter execute a promissory note for the amount of the fee demanded by
the one performing the services, and then defeat liability on that note by
contending that the services were not worth the amount of the note. If there
was a question as to the value of services already rendered, that question
must be considered as resolved by the execution of the note. (40) 


 We agree with the Fowler court's reasoning. We hold that Tummel's affidavits and
the promissory notes constitute more than a scintilla of evidence supporting the
reasonableness and necessity of T&C's attorneys' fees. We hold the trial court erred in
granting appellees' no-evidence motion for summary judgment as to T&C's claim for
attorneys' fees. We sustain appellants' fifth issue. 

 In their sixth issue, appellants contend that their motions for summary judgment on
their claim for attorneys' fees, "granted on April 20, 2000, established entitlement to
summary judgment as a matter of law." In support, however, appellants simply challenge
appellees' evidence in response to their motions as incompetent. Appellants then urge
that "the only summary judgment evidence which this Court needs to consider in
determining whether Tummel & Casso proved its entitlement to summary judgment as
rendered on April 20, 2000, is the summary judgment evidence submitted by Tummel &
Casso in support of its motions." As noted, the summary judgment granted in favor of
appellants was vacated. As movants, appellants bear the burden of showing both no
genuine issue of material fact and entitlement to judgment as a matter of law. (41) In the
absence of any authority or citations to the record in support of their argument, we hold
that appellants have waived their sixth issue. (42)

 In their seventh issue, appellants contend the trial court erred in denying their
motion for sanctions. On November 6, 2003, appellants filed a "Third Amended Answer,"
which included the following paragraph:

In addition, [appellants] would show that all of the claims which have been
asserted herein are groundless, brought in bad faith, brought for the purpose
of harassment, and brought for an improper purpose for which [appellants]
seek redress under Section 9.012 of the Texas Civil Practice and Remedies
Code and Texas Rule of Civil Procedure 13.


 In their brief, appellants assert that their evidence established, among other things,
that appellees (1) only asserted malpractice claims against them after appellants
demanded payment of past due legal fees, (2) did not assert malpractice claims against
other attorneys who served as co-counsel with appellants, (3) failed to present competent
opinion testimony supporting their malpractice claims, (4) resisted discovery, and (5) non-suited some of their claims against appellants without consideration. In support, appellants
refer us to "Plaintiffs' Exhibit 3," an exhibit consisting of approximately 134 pages. Absent
specific argument as to how appellants' evidence supports their claim for sanctions and
specific citations to the record, we are unpersuaded that the trial court abused its discretion
in denying appellants' request. (43) We overrule appellants' seventh issue.

Conclusion 


 We (1) reverse the trial court's August 31, 2001 order granting appellees' no-evidence motion for summary judgment on appellants' claims for attorneys' fees, (2)
reverse the trial court's April 25, 2003 order granting appellees' traditional motion for
summary judgment for legal malpractice, (3) reverse the trial court's April 5, 2004 order
granting appellees' motion for partial summary judgment and awarding damages, (4)
reverse the trial court's June 18, 2004 final judgment, and (5) remand this cause to the trial
court for further proceedings consistent with this opinion. 


 

 LINDA REYNA YAÑEZ,

 Justice




Memorandum opinion delivered and filed 

this the 15th day of February, 2007.

 


 

 

 

 


 

 

 
1. The Honorable Federico G. Hinojosa, former Justice of this Court, did not participate in this opinion
because his term of office expired December 31, 2006. See Tex. R. App. P. 41.1(c).
2. T&C's lawsuit was filed in trial court cause number C-4419-99-B ("the parent cause number").
3. Appellees' counterclaim for legal malpractice was not included in the motion.
4. The February 21, 2003 motion notes that two other litigation matters in which appellees allege
appellants committed legal malpractice-- the day surgery litigation and the "Dove McColl Properties
litigation"-- are "reserved for disposition during trial on the merits." All of appellees' claims were subsequently
non-suited except for the legal malpractice claims regarding the Sweeney litigation, which are the subject of
the February 21, 2003 motion. Accordingly, we view the February 21, 2003 motion as superseding the March
29, 2001 motion. 
5. See Tex. R. Civ. P. 166a(i), (c); see also Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.-Corpus Christi 2003, no pet.) (op. on reh'g). 
6. Ortega, 97 S.W.3d at 772. 
7. See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985); see
also Ortega, 97 S.W.3d at 771. 
8. Ortega, 97 S.W.3d at 771. 
9. Id. 
10. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
11. Ortega, 97 S.W.3d at 772. 
12. Id. 
13. Tex. R. Civ. P. 166a(i).
14. Ortega, 97 S.W.3d at 772. 
15. Id. (quoting Kindred v. Con/Chem Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 
16. Id. (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). 
17. Tex. R. Civ. P. 166a(i).
18. Cosgrove v. Grimes, 774 S.W.2d 662, 665 (Tex. 1989); Rodriguez v. Klein, 960 S.W.2d 179, 184
(Tex. App.-Corpus Christi 1997, no pet.). 
19. Klein, 960 S.W.2d at 184. 
20. Id. 
21. Id. (citing cases).
22. Id. 
23. Id. at 184-85.
24. Id. at 185.
25. Id.
26. Cosgrove, 774 S.W.2d at 665 (emphasis in original). 
27. Zenith Star Ins. Co. v. Wilkerson, 150 S.W.3d 525, 530 (Tex. App.-Austin 2004, no pet.). 
28. Id. 
29. See Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991). 
30. See Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996). 
31. See id.
32. See Tex. R. Civ. P. 166a(c). 
33. See Hood, 924 S.W.2d at 122. 
34. Turner v. Lone Star Indus., Inc., 733 S.W.2d 242, 246 (Tex. App.--Houston [1st Dist.] 1987, writ
ref'd n.r.e.). 
35. Id. 
36. See Tummel v. Mega Life Ins. Co., Nos. 13-02-312-CVV, 13-02-313-CV, 13-02-314-CV, 13-02-315-CV, and 13-02-316-CV, 2004 Tex. App. LEXIS 7735, at *10 (Tex. App.-Corpus Christi 2004, pet. denied)
(relying on rule 329b(d) of the rules of civil procedure in noting that on May 19, 2000, the trial court vacated
its April 20, 2000 summary judgment order at a time when it still enjoyed plenary power over the order). 

37. Specifically, appellants' response identifies Harold Tummel's affidavits dated December 21, 1999, 
February 16, 2000, May 17, 2001, and May 22, 2001. The response states that Tummel's December 21, 1999
and February 16, 2000 affidavits and attachments were previously filed in the case and were attached to
appellants' motions for summary judgment. The response states that both earlier-filed affidavits and
attachments are "incorporated herein by reference as if fully set forth at length as evidence in opposition to
the [appellees'] Motion for Partial Summary Judgment." Tummel's May 22, 2001 affidavit (attached to the
response) refers to the February 16, 2000 affidavit and states that the charges for legal services rendered by
appellants to appellees were reasonable. 
38. Hall v. Fowler, 389 S.W.2d 730, 731 (Tex
. App.-Dallas 1965, no writ). 
39. Id. at 732. 
40. Id.
41. See Tex. R. Civ. P. 166a(c); Nixon, 690 S.W.2d at 548; Ortega, 97 S.W.3d at 771. 
42. See Tex. R. App. P. 38.1(h).
43. See Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex. 1992) (noting abuse-of-discretion
standard applies to trial court's decision to impose sanctions).